UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE DHOOGHE,                              Case No. 09-12630

        Plaintiff,

v.                                            District Judge John Feikens
                                              Magistrate Judge R. Steven Whalen
McLAREN HEALTH SERVICES, d/b/a
McLAREN REGIONAL MEDICAL CENTER

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant McLaren Health Services, d/b/a McLaren Regional Medical Center's ("McLaren's") Motion for Summary Disposition Pursuant to FRCP 12 (b)(6) and 56 [Docket #8], filed February 15, 2010, which has been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Docket #8] be GRANTED, dismissing all claims with prejudice.

    **I.   PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Suzanne Dhooghe filed suit in Genesee County Circuit Court on May 5, 2009, alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. ¶2601, *et seq.*, Michigan Persons With Disabilities Civil Rights Act ("PWDCRA"), M.C.L. §37.1202(1) *et seq.*, retaliation for asserting her rights under these statutes, and defamation. *Docket #1* at 5-9. Defendant removed the case to this Court on July 6, 2009 pursuant to 28

U.S.C. § 1441. *Docket #1.*

Plaintiff makes the following factual allegations. Between 2006 and 2008, she requested and received intermittent FMLA leave time on multiple occasions as a result of Irritable Bowel Syndrome ("IBS") from Defendant employer, a health care provider. *Complaint* at ¶¶5-6. Nonetheless, in violation of the FMLA and PWDCRA, on September 6, 2007, Plaintiff, a registered nurse, was "written up" for excessive absenteeism during the previously approved leave time.

Plaintiff acknowledges that by May 10, 2008, she had taken approximately 17 FMLA leaves. She was terminated from her employment, and alleges that Defendant falsely accused her of stealing drugs from the hospital. *Id.* at ¶18. Plaintiff, asserting that the termination for stealing drugs was common knowledge among her former coworkers, also seeks damages for defamation. *Id.* at ¶¶23-32.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the sufficiency of a complaint, the court must first determine whether it contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, ---U.S.---,

129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

129 S.Ct. at 1950 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

#### A. The FMLA

##### 1. Applicable Law

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for . . . 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 446 (6th Cir. 2007)(*citing* 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)). "A 'serious health condition' is 'an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . .continuing treatment by a health care provider." *Id*. (*citing* 29 U.S.C. § 2611(11)).

"The FMLA also permits an employee to take leave from work to care for a parent, spouse, or child suffering from a serious health condition." *Novak v. MetroHealth Medical Center,* 503 F.3d 572, 581 (6th Cir. 2007); 29 U.S.C. § 2612(a)(1)(C). "An employee need not specifically mention the FMLA when taking leave; all the employee must do is notify the employer that FMLA-qualifying leave is needed." *Chandler v. Specialty Tires of America (Tenn.), Inc.,* 283 F.3d 818, 825 (6th Cir.2002); 29 C.F.R. § 825.303(b). The employee may receive "one block of leave of twelve weeks or fewer" or "intermittent leave, which is 'taken in separate periods of time due to a single illness or injury . . . and may include leave of periods from an hour or more to several weeks'" *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005)(*citing* 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800).

A plaintiff can recover for violations of his FMLA rights under the "interference theory" (29 U.S.C. § 2615(a)(1)) and/or the "retaliation theory." *Hoffman,* at 418 (*citing* 29 U.S.C. § 2615(a)(1)(2)). Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the Act. In establishing an interference claim, "a plaintiff must demonstrate the following:

> "(1) [he/]she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled."

*Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)(*citing Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir.2005)).

As to a "retaliation" claim, 29 U.S.C. § 2615(a)(2)(2) forbids "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. "[T]he FMLA, like Title VII, authorizes claims based on an adverse employment action motivated by both the employee's use of FMLA leave and

also other, permissible factors." *Hunter v. Valley View Local Schools,* 579 F.3d 688, 691 - 692 (6th Cir. 2009)(*citing See Gross v. FBL Fin. Servs., Inc.,* --- U.S. ---, 129 S.Ct. 2343, 2348-49, 174 L.Ed.2d 119 (2009)). As such, "[a]n FMLA retaliation claim is governed by the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Fritz v. Phillips Service Industries, Inc.,* 555 F.Supp.2d 820, 830 (E.D.Mich.2008)(Gadola, J.); *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 508 (6th Cir.2006). "[T]he FMLA, like Title VII, authorizes claims based on an adverse employment action motivated by both the employee's use of FMLA leave and also other, permissible factors." In establishing a retaliation claim, a plaintiff must show:

> "(1) [he/]she was engaged in an activity protected by the FMLA; (2) the employer knew that [the employee] was exercising . . . rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [employee]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action."

*Killian,* 454 F.3d at 556 (*citing Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir.2003)).

Once the plaintiff has made this showing, the burden shifts to the Defendant to articulate a nonretaliatory reason for taking the challenged action. *McDonnell-Douglas*, 411 U.S. at 802-803, 93 S.Ct. at 1824.[1] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for retaliation. *Id*. at 804-805, 1825. In establishing pretext, the plaintiff must show that " 'either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they were insufficient to motivate discharge.' " *Russell v. University of*

---

[1] This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

*Toledo*, 537 F.3d 596, 604 (6th Cir.2008)(*citing Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994)(*overruled on other grounds, Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir.2009)).

### 2. Application to the Present Case

Plaintiff does not allege that Defendant interfered with her right to FMLA leave time. Hence, the Court considers only whether Plaintiff was written up for excessive absenteeism and/or terminated in May, 2008 in retaliation for asserting her rights under the Act.

Plaintiff alleges that she received a written warning for missing work on August 27-28, 2007 despite the fact that she was approved for FMLA leave for these days. Plaintiff's Exhibit 6 shows that in September, 2007, she was indeed reprimanded for having unexcused absences on the FMLA-approved days of August 27 and 28, 2007. *Id.* at Exhibit 2, pg. 5 of 19.

However, the fact that Plaintiff may have been wrongly accused of two days of unexcused absences is insufficient to show retaliation. First, the written warning, with nothing more, would not constitute an adverse action. *Agnew v. BASF Corp.,* 286 F3d 307(6th Cir. 2002).

Further, she does not dispute that the September, 2007 warning was precipitated by 11 unapproved absences (excluding August 27 and 28) in a three-month period. *Plaintiff's Exhibit 6.* Further, Plaintiff acknowledges that subsequent requests for FMLA leave time were granted between the September, 2007 warning and her termination nine months later.

Next, assuming that Plaintiff has made a prima facie case of retaliation regarding her May, 2008 termination, she cannot overcome Defendant's showing that its reasons for firing her were non-retaliatory. Plaintiff admitted in deposition that her drug documenting

activities justifiably raised red flags. *Defendant's Exhibit B* at pgs. 53-54. Jennifer Forbes, a Human Resources Consultant for Defendant, states that an investigation (precipitated by charting discrepancies and a patient complaint) revealed "violations of charting protocol, improper wasting of controlled substances, a suspicious pattern of drug administration, and an inability to account for dosages. . ." *Defendant's Exhibit C* at ¶5. Under a collective bargaining agreement between her union and Defendant, "[p]osession of illegal drugs, diversion (theft) of drugs from the Employer, and/or distribution (sale or transfer) of drugs shall result in discharge." *Defendant's Exhibit C-5* at pg. 130.

Plaintiff argues that pretext can be shown by the fact that Defendant did not report her alleged drug diversion to state authorities as required by state law. *Complaint* at ¶26. However, Defendant has shown that Plaintiff's voluntary enrollment in a recovery program following her termination relieved them of the obligation to report her alleged protocol breaches:

> "Defendant did not report Plaintiff to the Department of Community Health because after being accused of, and being unable to effectively respond to, the accusation of drug diversion, Plaintiff enrolled in the HPRP [Health Professionals Recovery Program] program under which an impaired health professional can seek treatment and thus avoid investigation of drug use or diversion by the Department of Community Health. By signing up for HPRP, Plaintiff reported herself to the Department of Community Health and entered into a Monitoring Agreement . . . under which failure to complete the HPRP program is immediately reported to the Department of Community Health."

*Defendant's Reply* at 3, *Defendant's Exhibit 1.*

The Court is aware that Plaintiff has repeatedly denied stealing medication. While doubtlessly important from Plaintiff's perspective, whether she actually stole controlled substances is peripheral to the fact that compelling evidence supported the decision to terminate her. Plaintiff has as much as admitted that her termination was unrelated to her

FMLA leave time, acknowledging that her multiple breaches of hospital protocol would lead her supervisors to reasonably conclude that she had diverted drugs. *Defendant's Exhibit F*.

**B. PWDCRA**

Plaintiff's response to the present motion requests the remand of the state law claims. However, the Court has discretion to hear state law claims that "form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 209 (6th Cir. 2004)(*citing Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir.1996)). Because facts supporting the dismissal of the FMLA claim would also defeat the PWDCRA allegations, consideration of this claim is appropriate.

**1. Discrimination**

In pursuing claims under PWDCRA based on indirect evidence, the plaintiff must show "(1) that he is [disabled] as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute."(internal citations omitted). *Peden v. City of Detroit,* 470 Mich. 195, 204, 680 N.W.2d 857, 863 (2004).

"[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden,* at 204-205, 680 N.W.2d at 863. "Once the plaintiff has proved that he is a 'qualified person with a disability' protected by the PWDCRA," he must demonstrate that the defendant took adverse action

on the basis of the disability. *Id.,* at 205, 680 N.W.2d at 864 (*citing* M.C.L. 37.1202). Pursuant to M.C.L. 37.1202(b), a termination constitutes an adverse action. Consistent with the tripartite analysis set forth in *McDonnell Douglas*, the defendant must then provide non-discriminatory reasons for the adverse action. *Id.* (*citing Kerns v. Dura Mechanical Components, Inc.,* 242 Mich.App. 1, 12, 618 N.W.2d 56 (2000)).

Plaintiff is a long-term sufferer of IBS; she asserted her rights under the FMLA and she was terminated.[2] She has thus made a prima facie case of discrimination under the PWDCRA. However, Plaintiff cannot overcome Defendant's showing that she was terminated after evidence was produced showing that she had violated the terms of her employment under the collective bargaining agreement. As such, claims of discrimination under the Act should be dismissed.

**2. Retaliation**

Assuming that Plaintiff's ongoing requests for FMLA leave time enjoyed at least a temporal relationship to her termination, the Court will assume the presence of a prima facie case of retaliation under PWDCRA. In establishing a prima facie case of unlawful retaliation under § 602(a), a plaintiff must show that "(1) [s]he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and

---

[2]Under PWDCRA, a disability is defined as follows: "A determinable physical or mental characteristic . . . [which] substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position. . . . (ii) a history of [such a] determinable physical or mental characteristic ..." *Peden* at 204, 680 N.W.2d at 863 (*citing* M.C.L. 37.1103(d))(internal citations omitted). Although a 2006 IME at the request of Defendant showed that symptoms of IBS did not require leave time (*Plaintiff's Exhibit 5*) Plaintiff requested and received FMLA leave time on numerous occasions following the exam. The Court will assume for the sake of argument that Plaintiff's condition temporarily rendered her unable to perform her job duties.

the adverse employment action." *Aho v. Department of Corrections,* 263 Mich.App. 281, 288-289, 688 N.W.2d 104, 108 (2004)(*citing Bachman v. Swan Harbour Assoc.,* 252 Mich.App. 400, 435, 653 N.W.2d 415 (2002)). However, consistent with my above analysis, Plaintiff is unable to overcome Defendant's evidence that the termination was for reasons unrelated to her requests for FMLA leave time. Because Defendant has provided nonretaliatory reasons for her discharge, this claim is subject to dismissal.

### C. Count 3 / Retaliation

Assuming that the District Court adopts my recommendation to dismiss that FMLA and PWDCRA claims, Count 3 of the Complaint, alleging "[r]etaliation for asserting a right under both the FMLA and [PWDCRA]" should be dismissed consistent with the above analysis.[3]

### D. Defamation

Plaintiff's defamation claim arises out the same "nucleus of operative facts" surrounding her termination. For this reason and in the interests of judicial economy, the Court will address the merits of the defamation claim. To state a claim of defamation under Michigan law, a plaintiff must allege "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by

---

[3]Plaintiff's response to the present motion characterizes Count 3 as a "state common law retaliation." *Response* at 9. However, the Complaint itself alleges retaliation pursuant to the FMLA and PWDCRA. Absent an amendment to the original Complaint, the Court will construe the retaliation claim as pled.

publication." *Mitan v. Campbell,* 474 Mich. 21, 24, 706 N.W.2d 420, 421 (2005).

The Complaint does not state the identity of the individual who defamed Plaintiff or the recipient of the information. Plaintiff's failure to plead this allegation with specificity would by itself be fatal to the claim. *Gonyea v. Motor Parts Federal Credit Union,* 192 Mich. App. 74, 480 N.W. 2d 297 (1991). However, this count is dismissible on independent grounds. "[A]n employer has a qualified privilege to defame an employee by making statements to other employees whose duties interest them in the subject matter." *McMillin v. Fumich* 2002 WL 31953825, *3(2002)(*citing Patillo v. Equitable Life*, 199 Mich.App 450, 454; 502 N.W. 2d 696 (1992)). "A plaintiff may overcome this qualified privilege only by showing that the statement was made with actual malice." *Id.* (*citing* Gonyea, supra, 192 Mich.App at 79). The privilege can also be overcome "through excessive publication of a false defamatory statement." *Id.* (*citing Fulghum v United Parcel Service, Inc,* 424 Mich. 89, 106-107; 378 N.W. 2d 472 (1985).

Plaintiff has presented no evidence to show that staff members overseeing her investigation and termination republished information regarding the alleged drug diversion to other individuals. Human Resources staff member Jennifer Forbes, Plaintiff's direct supervisor Anita Sparks, and Defendant's Vice President of Human Resources Timothy Srock all deny repeating information regarding the investigation and/or termination with either nursing staff or other individuals. *Defendant's Exhibit C* at ¶16, *Exhibit D* at ¶6, *Exhibit E* at 5. Moreover, even assuming that sensitive information had been republished, Plaintiff has provided no support for her allegation that Defendant's employees acting with "reckless disregard of the truth or falsity" in sharing information regarding the drug diversion allegations. As such, this claim is also subject to dismissal.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Docket #8] be GRANTED, dismissing all claims against Defendant with prejudice.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 12, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 12, 2010.

              <u>S/G. Wilson        </u>
              Judicial Assistant